1
2
3
4
5
6
7
8                        IN THE UNITED STATES DISTRICT COURT

9                     FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   DANIEL P. KLAHN, SR.,                        No. C 13-1977 MMC

12             Plaintiff,                         **ORDER GRANTING DEFENDANT'S**
         v.                                       **MOTION TO DISMISS**
13
     QUIZMARK, LLC,
14
               Defendant.
15   _____/

16
            Before the Court is defendant Quizmark LLC's ("Quizmark") motion, filed June 26,

17   2013, to dismiss the above-titled action.  Plaintiff Daniel P. Klahn, Sr. ("Klahn") has filed

18   opposition,[1] to which Quizmark has replied.[2]  Having read and considered the papers filed

19   in support of and in opposition to the motion, the Court hereby rules as follows.[3]

20                                    **BACKGROUND**

21          In February 2010, Klahn and QFA Royalties, LLC ("QFA"), a parent company of

22   _____

23          [1]Quizmark objects to the opposition as untimely.  The Court nonetheless has
     considered it.
24
            [2] On August 26, 2013, after briefing was completed, Klahn filed a "Reply to
25   Defendant's Points and Authorities to Motion to Dismiss."  Under the local rules of this
     district, subject to certain exceptions not applicable here, no party may file any further
26   briefing after the reply.  See Civil L.R. 7-3(d).  Accordingly, Klahn's August 26, 2013 filing is
     hereby STRICKEN.  Moreover, even if it were considered, such filing would not change the
27   court's findings stated herein.

28          [3] By order filed August 5, 2013, the Court deemed the matter suitable for decision on
     the parties' written submissions and vacated the hearing set for August 9, 2013.

United States District Court
For the Northern District of California

1   Quizmark, entered into a franchise agreement.  (See Compl. at 6:16-17; Request for

2   Judicial Notice ("RJN") Ex. 2.)[4]  On May 21, 2010, Klahn and WG Companies, LLC ("WG")

3   entered into a Finance and Guaranty agreement with Quizmark, LLC, by which WG

4   obtained a loan in the amount of $57,500.  (See Compl. at 2:7-11 & Ex. 6.)  Klahn alleges

5   the purpose of the agreement was to finance the re-opening of a Quizno's Restaurant (see

6   Compl. at 2:9), but that in the fall of 2010, QFA "stopped Klahn's online access to the

7   corporate website, delivery service, credit card processing and food ordering and

8   essentially closed Klahn's location" (see Compl. at 6:9-12).  Klahn alleges he stopped

9   making loan payments to Quizmark as of November 8, 2010, for the reason that "QFA . . .

10  breached the franchise agreement and had no expectation of future payments."  (See

11  Compl. at 6:15-17.)

12          On February 27, 2012, Klahn filed suit in the Superior Court of California, County of

13  Alameda, alleging, inter alia, claims against QFA and Quizmark for breach of contract and

14  tortious interference with contract.  (See RJN, Ex. 1 at 28-30.)  On September 4, 2012, said

15  action was stayed by the Superior Court pending a ruling on QFA's motion to compel

16  arbitration, which motion was filed in Colorado state court.  (See RJN, Ex. 3.)[5]  On October

17  3, 2012, the District Court for the City and County of Denver ("Colorado Court"), found the

18  franchise agreement contained an enforceable arbitration clause, and, over Klahn's

19

20          [4] Quizmark requests the Court take judicial notice of the franchise agreement, as
    well as an arbitration award and three court orders.  As the franchise agreement is
21  referenced in the complaint and Klahn does not challenge its authenticity, such document is
    subject to judicial notice.  See Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994)
22  (overruled on other grounds).  The arbitration award is a fact "that is not subject to
    reasonable dispute," see Fed. R. Evid. 201, and, as such, likewise is subject to judicial
23  notice, see Chandler v. State Bar of California, No. 08-00437 CRB, 2008 WL 901865 (N.D.
    Cal. Mar. 31, 2008).  Finally, a district court may take judicial notice of orders issued by
24  other courts.  See Papai v. Harbor Tug & Barge Co., 67 F.3d 203, 207 n.5 (9th Cir. 1995)
    (rev'd on other grounds).  Accordingly, Quizmark 's request is hereby GRANTED.

25          [5] The franchise agreement contains an arbitration clause providing the following:
    "Franchisor and Franchisee agree that . . . all controversies, disputes, or claims between
26  Franchisor (and its affiliates . . .) and Franchisee . . . arising out of or related to . . . this
    Agreement or any other agreement between Franchisor (and/or its affiliates) and
27  Franchisee . . . must be submitted for binding arbitration to the Denver Colorado office of
    the American Arbitration Association."  (See RJN Ex. 2, California Rider.)
28

2

1  objection, granted QFA's motion to compel arbitration.  (See RJN, Ex. 4.)

2          In the arbitration proceedings, QFA and Quizmark brought claims against Klahn,

3  alleging, respectively, breach of the franchise agreement and breach of the financing

4  agreement.  (See RJN Ex. 5 ¶¶ 33-49.)[6]  Klahn then brought counterclaims against QFA

5  and Quizmark, asserting, inter alia, their claims were barred by the franchise agreement's

6  one-year limitations period, that the franchise agreement was fraudulently created by QFA,

7  that the loan agreement was fraudulently created by Quizmark, that QFA breached the

8  franchise agreement, and that Quizmark breached the loan agreement.  (See RJN, Ex. 5

9  ¶¶ 55-63.)  During the course of the proceedings, Klahn participated in multiple prehearing

10  telephonic conferences, but ultimately chose not to participate in the hearing.  (See RJN,

11  Ex. 5 ¶ 1.)[7]  Following the hearing, the arbitrator found Klahn had entered into a valid and

12  enforceable franchise agreement with QFA, which he breached.  (See RJN, Ex. 5 ¶¶ 33-

13  35.)  The arbitrator also found WG had entered into a valid and enforceable loan

14  agreement with Quizmark, which loan was personally guaranteed by Klahn, and which

15  agreement Klahn breached.  (See RJN, Ex. 5 ¶¶ 47-49.)  Additionally, the arbitrator found

16  against Klahn on each of his counterclaims.  (See RJN, Ex. 5 ¶¶ 55-64.)  On June 12,

17  2013, the Colorado Court confirmed the arbitrator's award and entered judgment in favor of

18  QFA and Quizmark.  (See RJN, Ex. 6.)

19          In his complaint, Klahn asserts seven claims against Quizmark, all based on the

20  finance agreement:  (1) "Breach of Contract"; (2) "Statute of Limitations"; (3) "Tortious

21  Breach of Contract"; (4) "Cal. Fin. Code, Div. 9 CFLL Article 4. Regulations section 22162";

22  (5) "Cal Fin. Code, Div. 9, CFLL Article 3 Regulation section 22601"; (6) "Secured

23

24          [6] Although Quizmark was not an original party to the arbitration, it was added as an
additional claimant during the course of the proceedings.  (See Compl. at 10:3-4.)

25

26          [7] Although Klahn asserts he "was forced to withdraw his claims and not participate in
the final hearing" (see Opp'n at 6:21-22), such assertion is not supported by the record.  As
27  discussed above, the arbitrator found Klahn chose not to participate in the final hearing,
and, as the arbitrator noted, did so after having been advised he could participate by
28  telephone in order to save on travel expenses.  (See RJN, Ex. 5 at 1.)

1  Transactions Pursuant to Article 9 of the Uniform Commercial Code (UCC)"; and (7) "Unfair

2  Business Practices."  (See Compl. at 7-13.)

3  **DISCUSSION**

4  By the instant motion, Quizmark moves, pursuant to Rule 12(b)(6) of the Federal

5  Rules of Civil Procedure, to dismiss Klahn's complaint in its entirety, on the ground that all

6  of the above-referenced claims are barred by the doctrine of res judicata, either because

7  they were adjudicated by the arbitrator's award, which was affirmed by the Colorado Court,

8  or because they constitute compulsory counterclaims that Klahn was required to assert in

9  the arbitration proceedings.  "Res judicata, also known as claim preclusion, bars litigation in

10  a subsequent action of any claims that were raised or could have been raised in the prior

11  action." W. Radio Servs. Co., Inc. v. Glickman, 123 F.3d 1189, 1197 (9th Cir. 1997).

12  Where an assertion of res judicata is based on a prior state court judgment, federal courts

13  give such judgment "the same preclusive effect as would be given that judgment under the

14  law of the State in which judgment was rendered."  See Holcombe v. Hosmer, 477 F.3d

15  1094, 1097 (9th Cir. 2007).  Under Colorado law, "[r]es judicata operates as a bar to a

16  second action on the same claim as one litigated in a prior proceeding when there is a final

17  judgment, identity of subject matter, claims for relief, and parties to the action."  See City &

18  Cnty. of Denver v. Block 173 Associates, 814 P.2d 824, 830 (Colo. 1991).

19  Here, Klahn's first through third claims meet the above-referenced test.  The

20  Colorado Court issued a final judgment, the arbitration proceedings covered the same

21  subject matter as that raised in said claims, said claims were asserted in the arbitration

22  proceedings, and both Klahn and Quizmark were parties to those proceedings.  (See RJN

23  Exs. 5 & 6.)[8]  In his opposition, Klahn argues the arbitrator's award and the Colorado

24

25  [8] In his August 26, 2013 filing, which, for the reasons noted above, has been
stricken, Klahn states he only filed counterclaims against QFA.  The filing submitted by

26  Klahn in support of such assertion, however, predates Quizmark's entry into the arbitration
proceedings and the filing of Quizmark's claims against Klahn.  Moreover, even if Klahn

27  had not brought counterclaims against Quizmark, the above-referenced three claims
nonetheless fail for the reason that the arbitrator adjudicated those claims and the Colorado

28  Court confirmed the arbitrator's award, and for the further reason that said claims all arise

4

1   Court's confirmation thereof should not be accorded res judicata effect because, he

2   asserts, the arbitrator made various legal errors in the course of the proceedings.  Klahn's

3   challenge is, in essence, directed at the state court's decision confirming the arbitration

4   award.  "[T]he rule of res judicata," however, "does not depend upon whether the judgment

5   relied on was correct or not."  See Westwood Chem. Co., Inc. v. Kulick, 656 F.2d 1224,

6   1231 (6th Cir. 1981); Baltimore S.S. Co. v. Phillips, 274 U.S. 316, 325 (1927) (holding

7   effect of prior judgment "is the same whether resting upon an erroneous view of the law or

8   not").

9        Klahn's fourth through seventh claims were not brought in the arbitration

10  proceedings.  Quizmark argues they nonetheless are likewise barred as compulsory

11  counterclaims.  Under Colorado law, "[r]es judicata not only bars issues actually decided,

12  but also any issues that should have been raised in the first proceeding but were not."  See

13  City & Cnty. of Denver, 814 P.2d at 830.  Colorado law requires parties to plead

14  compulsory counterclaims, which, as defined therein, are claims "aris[ing] out of the

15  transaction or occurrence that is the subject matter of the opposing party's claim."  See

16  Colo. R. Civ. P. 13(a).  In applying said law, Colorado courts have adopted what has been

17  described as the "logical relationship test," by which the court inquires whether there is "any

18  logical relation between the claims and the counterclaims."  See McCabe v. United Bank of

19  Boulder, 657 P.2d 976, 978 (Colo. Ct. App. 1982).  "In applying this test, a trial court must

20  determine whether the claims involve all or many of the same factual and legal issues, or

21  offshoots of the same basic controversy between the parties."  Id.

22       Here, Klahn's fourth through seventh claims are based on the financing agreement

23  and actions taken by Quizmark in connection therewith.  (See Compl. at 12-13 (alleging

24  claims based on assertedly non-conforming advertisement of franchise and financing

25  agreements, dishonored check fees charged in excess of those allowed under state law,

26  _____

27  out of the same transaction as the claims brought by Quizmark in the arbitration
    proceedings, specifically, the financing agreement, and thus, for the reasons discussed
28  below, are barred.

5

1   premature attachment of collateral for loan, and "unfair practices" based on content of

2   franchise and financing agreements).  As such claims are "offshoots of the same basic

3   controversy between the parties" as that adjudicated in the initial arbitration proceedings,

4   they are barred by the doctrine of res judicata.  See id.

5                                            **CONCLUSION**

6          For the reasons stated above, Quizmark's motion to dismiss is hereby GRANTED,

7   and plaintiff's complaint is hereby DISMISSED without leave to amend.

8          **IT IS SO ORDERED.**

9

10  Dated:  August 28, 2013

                                              MAXINE M. CHESNEY
                                              United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6